IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:13-CT-3127-FL

| | |
|---|---|
| MARVIN W. MILLSAPS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| NURSE CLARK, NURSE SERGENT, ) | |
| DR. BROADWELL, and ) | |
| BUTCH JACKSON, ) | |
| ) | |
| Defendants. ) | |

The matter comes before the court on defendants' motion for summary judgment (DE 96) pursuant to Federal Rule of Civil Procedure 56(a). Also before the court is plaintiff's motion for leave to file an amended complaint (DE 111). Defendants did not respond to plaintiff's motion to amend. The remaining issues have been fully briefed and are ripe for adjudication. For the following reasons, the court denies plaintiff's motion to amend, but grants defendants' motion for summary judgment.

**STATEMENT OF THE CASE**

For ease of reference, the statement of the case as set forth in the court's January 15, 2016, order are as follows:

> On May 23, 2013, plaintiff, a state inmate, filed this civil rights action *pro se* pursuant to 42 U.S.C. § 1983 naming Dr. Broadwell ("Broadwell"), Nurse Clark ("Clark"), Butch Jackson ("Jackson"), and Nurse Sergent ("Sergent") as defendants in this action. Plaintiff then filed a motion for discovery and a motion for entry of default. On November 12, 2013, the court entered an order denying plaintiff's motions and directing plaintiff to particularize his action.

In response to the court's November 12, 2013, order, plaintiff filed a pleading captioned "affidavit proposed issue injunction relief." On December 3, 2013, the court entered an order stating that plaintiff's amended pleading was unclear and again directed plaintiff to particularize his complaint. Plaintiff submitted his second particularized complaint on December 17, 2013. Plaintiff then filed a motion for a permanent injunction and a motion to amend his complaint.

On May 7, 2014, the court entered an order denying plaintiff's motion for a temporary restraining order and granting plaintiff's motion to amend his complaint. The court additionally informed plaintiff that his particularized complaint and motion to amend were confusing and appeared to, in-part, assert duplicative claims. As a result, the court again directed plaintiff to file a particularized complaint. Plaintiff filed his particularized complaint on May 19, 2014, and the court thereafter allowed plaintiff to proceed with his particularized complaint. Plaintiff subsequently filed a motion to compel discovery, which the court denied.

On July 23, 2014, plaintiff filed a motion to amend his complaint. On August 25, 2014, plaintiff filed a motion to file a third-party complaint, which the court construed as a motion to amend his complaint, and motion for leave to depose. On September 5, 2014, plaintiff filed a motion for a more definite statement. On September 19, 2014, defendant Broadwell filed a motion for entry of a consent order governing discovery, which the court signed the same date. Then, on October 9, 2014, the court entered an order denying plaintiff's motions to amend as futile. The court also denied plaintiff's motion for leave to take depositions and motion for a more definite statement.

On December 18, 2014, defendant Broadwell filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). In response, plaintiff filed a motion to voluntarily dismiss defendant Broadwell from this action pursuant to Federal Rule of Civil Procedure 41(a), to which defendant Broadwell stipulated. On January 13, 2015, the court entered an order in which it granted plaintiff's motion to voluntarily dismiss defendant Broadwell and denied as moot defendant Broadwell's motion to dismiss. Plaintiff also filed a motion to compel discovery, which the court denied without prejudice.

> On January 22, 2015, plaintiff filed a motion to appoint counsel, a motion for leave to file a third party complaint, and a motion for leave to file an amended complaint. On February 2, 2015, the court entered an order denying plaintiff's motion to appoint counsel and denying as futile plaintiff's motion to file a third party complaint and motion for leave to file an amended complaint. The court entered a case management order on February 5, 2015. Plaintiff also filed a motion for a consent protective order, which the court denied.
>
> On March 3, 2015, plaintiff filed a motion to amend his complaint, which the court denied as futile. On July 20, 2015, plaintiff filed a motion to dismiss defendants' claims. On July 31, 2015, defendants filed a motion to dismiss pursuant to Rule 12(b)(6), arguing that plaintiff's action is barred by the doctrine of *res judicata* because plaintiff previously litigated the same cause of action in a North Carolina state tort action–<u>Millsaps v. North Carolina Department of Correction</u>, No. TA-23289 (N.C. July 21, 2014) ("<u>Millsaps</u> I"). The motion was fully briefed. Plaintiff subsequently filed a motion for "Relief, Contributory Negligence, Failure to Consideration Co-Payment, Support of Memorandum," motion for entry of default, and motion for an extension of time. Defendants did not respond to plaintiff's motions.

(DE 89).

In that January 15, 2016, order, the court denied plaintiff's motion to dismiss, motion for "Relief, Contributory Negligence, Failure to Consideration Co-Payment, Support of Memorandum," motion for entry of default, and defendants' motion to dismiss. Pursuant to a motion filed by plaintiff, the court additionally extended the case management deadlines. The court again extended the case management deadlines, at plaintiff's request, on March 4, 2016. On March 10, 2016, plaintiff filed a motion for discovery. Plaintiff next filed a motion for legal claims and prayer for relief. On April 14, 2016, the court granted in part and denied in part plaintiff's motion to compel discovery. Specifically, the court granted plaintiff's motion as to his request for medical records from plaintiff's October 2015 gastroenterology appointment, but denied plaintiff's motion as to his remaining discovery requests.

3

On May 23, 2016, defendants filed a motion for summary judgment arguing that plaintiff failed to exhaust his administrative remedies prior to filing this action and failed to establish a constitutional violation. Defendants attached to their motion the affidavits of North Carolina Department of Public Safety ("DPS") Assistant Director of Nursing Tammie Adcock ("Adcock") and Executive Director of the North Carolina Inmate Grievance Resolution Board Finesse Couch, as well as plaintiff's medical records. Alternatively, defendants argue the affirmative defense of qualified immunity. The motion was fully briefed.

On June 6, 2016, plaintiff filed a motion to appoint counsel. Two days later the court denied plaintiff's motion to appoint counsel and plaintiff's motion for legal claims and prayer for relief. Then, on July 7, 2016, the court entered an order noting that Adcock's affidavit failed to cite to specific portions of plaintiff's medical records as required by Federal Rule of Civil Procedure 56(c)(1)(A). As a result, the court directed defendants to re-file both their memorandum in support of their motion for summary judgment and Ms. Adcock's affidavit with the applicable citations to specific portions of plaintiff's medical records. Defendants complied with the court's order by re-submitting their memorandum and Adcock's affidavit on July 20, 2016. Plaintiff responded to defendants' revised memorandum in support of their motion for summary judgment. Plaintiff additionally filed a motion for leave to file an amended complaint and a pleading captioned "Affirmative Defense Answer by Plaintiff."

## STATEMENT OF FACTS

Except as where otherwise noted below, the undisputed facts are as follows. Plaintiff's action involves the medical care he received from defendants Clark and Sergent, both nurses, in response to his Gastroesophageal Reflux Disease ("GERD")-related complaints following his May 2012, transfer to Nash Correctional Institution ("Nash"). (Am. Compl. (DE 17)). Prior to plaintiff's transfer to Nash, he was being treated with the medications Levsin (generic for hyoscyamine; and antispasmodic used to treat digestive problems, irritable bowel syndrome, and colitis) and Prilosec (an acid reducer used to treat heartburn and GERD) for his complaints of discomfort related to GERD and constipation. (Adcock Aff. ¶ 6 and (DE 98), pp. 16, 20, 25, 44, 56 ).

On May 30, 2012, plaintiff attended his first medical appointment at Nash with Dr. Williams in response to complaints of abdominal and left shoulder pain. (Id. ¶ 8 and (DE 98) Ex. A, p. 22). After examining plaintiff, Dr. Williams discontinued plaintiff's prescription for Levsin because plaintiff complained that the drug caused him to experience "dizziness" and "drowsiness." (Id. and (DE 98), pp. 22, 25). Instead, Dr. Williams prescribed plaintiff Milk of Magnesia and Bentyl. (Id. and (DE 98) Ex. A, pp. 22, 68). Dr. Williams also ordered laboratory tests for plaintiff including a complete blood count, a metabolic profile, thyroid function, and a lipid panel. (Id. ¶ 15 and (DE 98) Ex. A, pp. 22). Dr. Williams did not refer plaintiff for a gastroenterology consultation at that time. (Id. ¶ 18). According to plaintiff's medical records, the order for Bentyl was not written until June 4, 2012, and medical staff did not submit a request for Bentyl to the Utilization Review ("UR") board. (Id. ¶ 12 and (DE 98) Ex. A, p. 89).

On June 8, 2012, plaintiff attended an appointment with Physicians Assistant Hines ("Hines") in response to a sick call request. (Am. Compl. (DE 17), p. 1). At the appointment, Hines

5

noted that plaintiff was seen by Dr. Williams and "confirmed" Dr. Williams' medical order. (Id.) Three days later, on June 11, 2012, a medical provider made a notation in plaintiff's medical records that plaintiff's prescription for Bentyl was discontinued and that plaintiff would be scheduled for a follow-up appointment in four weeks. (Adcock Aff. ¶ 12 and (DE 98) Ex. A, pp. 88, 100).

On June 15, 2012, plaintiff wrote defendant Clark a letter stating that he had not yet received the medications Dr. Williams prescribed on May 31, 2012. (Am. Compl. (DE 17), p. 1). Clark did not respond to plaintiff's letter. (Id.) However, the next day, Nash medical staff filled plaintiff's Milk of Magnesia prescription, and the medication was provided to plaintiff for self administration on June 21, 2012. (Id. ¶ 14 and (DE 98) Ex. A, pp. 55).

Nash medical staff subsequently made several attempts to draw blood for plaintiff's laboratory tests, which were unsuccessful due to plaintiff's suspected dehydration. (Id. ¶ 16 and (DE 98) Ex. A, p. 105). Medical staff advised plaintiff to stay hydrated and staff ultimately completed the laboratory tests on July 30, 2012. (Id. ¶ 17 and (DE 98) Ex. A, pp. 75-76, 79-80, 105). The laboratory test results for plaintiff were within normal limits and showed no indication of abnormal bleeding. (Id.)

During the summer months of 2012, plaintiff continued GERD treatment at Nash with other medications, including Prilosec and Lactulose. (Id. ¶ 20 and (DE 98) Ex. A, pp. 62, 74, 86-89). In particular, on July 23, 2012, a nurse examined plaintiff in response to a sick call request complaining that plaintiff's prescribed Milk of Magnesia was not effective. (Id. (DE 98) Ex. A, p. 29). After examining plaintiff, the nurse noted that plaintiff was experiencing nausea, but that plaintiff denied symptoms of gas or burping. (Id.) The nurse assessed plaintiff with health-seeking behavior and provided plaintiff with a liquid antacid. (Id.)

6

In August 2012, plaintiff wrote letters to defendants Clark, Jackson, and Broadwell complaining that he had not received the medications Dr. Williams prescribed on May 31, 2012, but defendants did not respond to plaintiff's letters. (Am. Compl. (DE 17), pp. 1-2). On October 4, 2012, plaintiff was transferred from Nash to Albemarle Correctional Institution. (Adcock Aff. (DE 98) Ex. A, p. 103). Then, on October 13, 2015, plaintiff underwent an esophagogastroduodenoscopy. (Id. ¶ 21 and (DE 98) Ex. A, pp. 6-12). The results of the procedure reflected that plaintiff had mild gastritis. (Id. (DE 98) Ex. A, p. 6).

## DISCUSSION

A.  Motion for Summary Judgment

1.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

2. Analysis

   a. Exhaustion of Administrative Remedies

Defendants assert that plaintiff's action should be dismissed for failure to exhaust his administrative remedies prior to filing this action. Title 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA") requires a prisoner to properly exhaust his administrative remedies before filing an action under 42 U.S.C. § 1983 concerning his confinement. Ross v. Blake, __ U.S. __, 136 S. Ct. 1850, 1856 (2016) ("[A] court may not excuse a failure to exhaust, even to take [special circumstances] into account."); Woodford v. Ngo, 548 U.S. 81, 83–85 (2006) (requiring "proper" exhaustion of administrative remedies); see Jones v. Bock, 549 U.S. 199, 217 (2007) ("failure to exhaust is an affirmative defense under [42 U.S.C. § 1997e]"); Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005). The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement is mandatory. Woodford, 548 U.S. at 85; Porter v. Nussle, 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory."). A prisoner must exhaust his administrative remedies even if the relief requested is not available under the administrative process. Booth v. Churner, 532 U.S. 731, 741 (2001). "[U]nexhausted claims cannot be brought in court." Jones, 549 U.S. at 211.

The record reflects that plaintiff exhausted grievances related to his GERD treatment. (Couch Aff. Exs. A, C). The fact that plaintiff did not specifically name defendants in his grievances is not fatal because the PLRA does not require that a plaintiff name an individual in his grievance

8

in order to exhaust his administrative remedies against that individual. Jones, 549 U.S. at 922; see Moore v. Bennette, 517 F.3d 717, 726 (4th Cir. 2008) (stating that the administrative remedy procedure requires "only that a grievance be submitted on a Form DC-410, which does not require identification of the persons responsible for the challenged conduct."). Because it is clear from plaintiff's grievances that he complained about his treatment for GERD at Nash, this court finds that plaintiff properly exhausted his claim against defendants. The court now turns to the merits of plaintiff's Eighth Amendment claims.

        b.        Eighth Amendment Claims

Defendants raise the affirmative defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

In analyzing whether defendants are entitled to qualified immunity, the court first considers whether plaintiff has established a constitutional violation. "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The first prong is an objective one–the prisoner must show that "the deprivation of [a] basic human need was *objectively* sufficiently serious"–and the second prong

9

is subjective–the prisoner must show that "*subjectively* the officials act[ed] with a sufficiently culpable state of mind."  See Strickler, 989 F.2d at 1379 (quotations omitted).

The court assumes, without deciding, that plaintiff is able to satisfy the objective prong of the Eighth Amendment test. Accordingly, the court focuses its inquiry on the second prong-whether defendants acted with deliberate indifference to his serious medical needs. "Deliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." See Farmer v. Brennan, 511 U.S. 825, 835 (1994). It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. Id. at 837; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). Mere negligence or malpractice in diagnosis or treatment does not state a constitutional claim. Estelle v. Gamble, 429 U.S. 97, 105-106 (1976); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998).

The court begins with plaintiff's contention that defendant Clark violated his constitutional rights because Clark ignored Dr. Williams' May 30, 2012, prescriptions for Bentyl and Milk of Magnesia. The record belies plaintiff's claim. Specifically, the record reflects that Dr. Williams' prescription for Bentyl was discontinued by a health provider shortly after it was prescribed. (Adcock Aff. (DE 98), pp. 22, 25). Moreover, defendant Clark, a nurse, did not have the authority to prescribe or discontinue prescriptions for any medications. (Adcock Aff. ¶ 3, 22). As for plaintiff's Milk of Magnesia prescription, the record reflects that plaintiff personally acknowledged receiving the medication on June 21, 2012. (Id. ¶ 14 and (DE 98) Ex. A, pp. 55). Accordingly, there is no evidence to establish that defendant Clark interfered with Dr. Williams' May 30, 2012, orders.

10

To the extent plaintiff asserts that defendant Clark somehow delayed the execution of plaintiff's prescription for Milk of Magnesia for the time period of May 30, 2012, through June 21, 2012, plaintiff failed to establish a constitutional violation. "A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." Abraham v. McDonald, 493 F. App'x 465, 466 (4th Cir. 2012) (quoting McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir .2010)); Webb v. Hamidullah, 281 F. App'x. 159, 166 (4th Cir. 2008) ("An Eighth Amendment violation only occurs [ ] if the delay results in some substantial harm to the patient."). Here, there is no indication that the alleged delay in providing plaintiff his medication resulted in substantial harm. In fact, plaintiff reported to nursing staff on July 23, 2012, that the medication Milk of Magnesia was not effective for treating his GERD, and medical staff then provided plaintiff with an alternative medication. (Adcock Aff. (DE 98), p. 29). Plaintiff, additionally, has produced no evidence reflecting that any delay in the provision of his medication was attributable to defendant Clark. Rather, the record reflects that plaintiff received his Milk of Magnesia shortly after his June 11, 2012, letter to defendant Clark complaining that the medication had not been received. (Adcock Aff. (DE 98), pp. 22, 25). Such actions do not constitute deliberate indifference. See Farmer, 511 U.S. at 837. Rather, at most, plaintiff alleges negligence, which is not actionable pursuant to § 1983. See Estelle, 429 U.S. at 106.

The court next turns to plaintiff's Eighth Amendment claim against defendant Sergent. Plaintiff contends that, on August 19, 2012, defendant Sergent informed plaintiff that plaintiff's Bentyl prescription had been discontinued and maliciously refused to provide plaintiff a reason for its discontinuation. Plaintiff, however, has produced no evidence indicating that defendant Sergent was responsible for either prescribing or terminating plaintiff's Bentyl prescription. In fact, plaintiff

11

appears to attribute the termination of his Bentyl prescription to either former defendant Broadwell or a Physician Assistant named Leggitt, neither of which are current parties to this action. (Id.) Moreover, assuming plaintiff's allegations regarding Sergent's attitude are true, a bad attitude by a medical provider is not actionable pursuant to the Eighth Amendment. See White v. Francis, No. 2:07cv15, 2009 WL 302310, at *6 (N.D.W. Va. Feb. 5, 2009) (finding plaintiff failed to state a constitutional claim with allegation that the defendant nurse acted with an unprofessional attitude), aff'd, 378 F. App'x 371 (4th Cir. 2010); Sires v. Berman, 834 F.2d 9, 13 (1st Cir. 1987) (Petty squabble with a rude nurse is not deliberate indifference to a serious medical need). Thus, plaintiff failed to establish that defendant Sergent acted with deliberate indifference.

To the extent plaintiff asserts that either Clark or Sergent failed to follow Dr. Williams' recommendation that plaintiff be referred to a gastroenterologist for treatment, this claim is belied by the record. Specifically, plaintiff's medical records are devoid of any indication that Dr. Williams referred plaintiff to a gastroenterologist on May 30, 2012. (See (DE 98), Ex. A). Plaintiff's personal belief that he required an appointment with a gastroenterologist or specific medications amounts to nothing more than a difference of opinion as to course of treatment, which fails to state a claim of constitutional magnitude. See, e.g., Jackson v. Sampson, 536 F. App'x 356, 357 (4th Cir. 2013) (per curiam); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam). Further, as stated, neither Clark or Sergent, both nurses, had the independent authority to refer plaintiff to a specialist. (Adcock Aff. ¶ 22). Based upon the foregoing, plaintiff failed to establish that defendant Clark or Sergent acted with deliberate indifference to his serious medical needs, and defendants Clark and Sergent are entitled to qualified immunity.

Finally, the court addresses plaintiff's Eighth Amendment claim against defendant Jackson. Plaintiff's allegations against Jackson fail to state a claim because they are based upon a theory of *respondeat superior*, as opposed to supervisory liability, in that plaintiff failed to allege facts sufficient to establish any deliberate indifference, tacit authorization, or any personal involvement whatsoever on behalf of Jackson. See Monell v. Department of Social Services of City of New York, 436 U.S. 658, 694 n. 58 (1978) (holding that respondeat superior is unavailable under § 1983); Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (setting forth requirements to properly assert a supervisor liability claim under § 1983). Even if defendant Jackson had personal knowledge of plaintiff's medical complaints from plaintiff's August 2012, letter, plaintiff still would not be entitled to relief because non-medical prison officials, such as defendant Jackson, are entitled to rely on the judgment of medical personnel as to the appropriate medical treatment of inmates. Shakka, 71 F.3d at 167; Farmer, 511 U.S. at 840. Based upon the foregoing, plaintiff failed to establish a constitutional violation, and defendant Jackson is entitled to qualified immunity.[1]

B. Motion to Amend

Plaintiff seeks leave to amend his complaint to add Adcock, DPS's Assistant Director of Nursing, as a defendant in this action. At this point in the proceedings, plaintiff requires leave of court to amend his complaint. See Fed. R. Civ. P. 15(a)(2). Leave to amend must be freely given when justice so requires, and will be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile. See Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en banc). "[T]he grant or denial of

---

[1] To the extent plaintiff seeks to bring North Carolina state law claims, the court declines to exercise supplemental jurisdiction over such claims pursuant to 28 U.S.C. § 1367(c).

13

an opportunity to amend is within the discretion of the District Court." Foman v. Davis, 371 U.S. 178, 182 (1962).

In his motion to amend, plaintiff makes the following allegation against Adcock: "On [6-4-12] an order for Bentyl was written on [5-30-12] by Dr. Williams[.] However, Director Adcock never put Dr. Williams order Bentyl 20 mg before UR request." (Am. Compl. (DE 111), p. 3). As stated above, a medical provider discontinued plaintiff's Bentyl prescription on June 11, 2012. (Adcock Aff. ¶ 12 and (DE 98) Ex. A, pp. 88, 100). Accordingly, even if Adcock failed to submit the UR request for Bentyl on June 4, 2012, such failure was of no consequence because the medication was discontinued by a medical provider shortly after it was prescribed. Moreover, plaintiff does not allege that Adcock intentionally failed to submit the UR request. Thus, plaintiff's allegations against Adcock do not rise to the level of an Eighth Amendment violation. See Farmer, 511 U.S. at 837 ("We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

The court, additionally, finds that permitting plaintiff to amend his complaint to include the above-stated allegation against Adcock, or any other claims, after the expiration of the case management order's deadline and after defendants filed their motion for summary judgment, is unduly prejudicial to defendants. See Naden v. Saga Software, Inc., 11 F. App'x 381, 383 (4th Cir. 2001) (affirming district court's finding that a motion to amend was untimely because it was filed four months after the scheduling order deadline and after non-movant filed for summary judgment);

14

see also, Moore v. United States, No. 4:09-cv-2046-RMG-TER, 2011 WL 4344108, at *6 (Aug. 10, 2011) (denying motion to amend as prejudicial to defendants where the motion was filed outside of the scheduling order and almost two years after the commencement of the action). For these reasons, plaintiff's motion to amend is DENIED as futile and prejudicial.

## CONCLUSION

Based upon the foregoing, plaintiff's motion to amend (DE 111) is DENIED. Defendants' motion for summary judgment (DE 96) is GRANTED. The court DECLINES to exercise supplemental jurisdiction over plaintiff's state law claims, and such claims are DISMISSED without prejudice. The clerk of court is DIRECTED to close this case.

SO ORDERED, this the 11th day of August, 2016.

_____
LOUISE W. FLANAGAN
United States District Judge